IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BILL HOMER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:22-CV-151-BR |
| | § | |
| AEP TEXAS INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND

Before the Court is Plaintiff Bill Homer's ("Homer") Motion to Remand the instant case to state court. (ECF 7). Defendant AEP Texas Inc. ("AEP") has filed a Response in opposition, (ECF 8), to which Homer has filed a Reply, (ECF 9). Having considered the arguments and attendant exhibits presented in the filings, as well as applicable law, and for the reasons stated below, Homer's Motion is DENIED.

### I.   BACKGROUND

Homer originally brought this action in the 100th District Court of Donley County, Texas alleging AEP caused "severe damage" to his property through its efforts to repair electrical transmission equipment. (ECF 1 at 19, 22). AEP, a foreign corporation solely engaged in electrical service delivery across large portions of Texas, removed the case to this Court on the basis of diversity jurisdiction. (ECF 7 at 5; ECF 1 at 2). Homer now seeks to remand the case back to state court, arguing that there is not complete diversity of citizenship between the parties. (ECF 7 at 1).

In support of his argument, Homer states that AEP "provides electricity services solely to Texas residents, using equipment located in Texas, with employees in Texas, and the corporation is directed by a Chief Operating Officer ["COO"] who lives and works in Texas." (*Id.*). AEP

counters with an affidavit from David C. House, Assistant Secretary and Associate General Counsel for AEP. (ECF 8-1 at 4–6). House states that AEP, a corporation organized "under the laws of the State of Delaware," maintains the bulk of its administrative functions in Ohio along with the offices for twenty of twenty-four corporate officers and eight of nine directors. (*Id.*). Those facts in hand, AEP contends its principal place of business for diversity of citizenship purposes lies in Ohio. (ECF 8 at 2).

Homer regards the housing of administrative functions as irrelevant and instead points to the fact that most, or perhaps all, or AEP's pure business activities, those that generate income for AEP, are located in Texas. (ECF 9 at 3). That, he concludes, when taken in conjunction with his offered caselaw, compels remand. (*Id.* at 6).

## II.  LEGAL STANDARD

It is axiomatic in our system that "federal court are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Because they "possess only that power authorized by Constitution and statute," there is a presumption that any given case "lies outside this limited jurisdiction." *Id*. It is incumbent upon the party asserting jurisdiction, in this case, AEP, to establish the contrary by competent proof. *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Diversity jurisdiction is governed by 28 U.S.C. § 1332. As applicable here, it confers jurisdiction upon federal district courts to hear cases between citizens of different states where the amount in controversy exceeds $75,000. *Id.* It also specifies that a corporation is a citizen of the state in which it is incorporated and that which hosts its principal place of business. *Id.*

The term 'principal place of business' is not defined by § 1332 but was clarified by the Supreme Court in *Hertz Corp. v. Friend*. 559 U.S. 77 (2010). There, the Court concluded that 'principal place of business' should be read by the lower courts to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," commonly referred to as the 'nerve center test.' *Id.* at 92–93; *see also Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986). As a practical matter, that generally refers to the headquarters, "provided that [it] is the actual center of direction, control, and coordination." *Hertz*, 559 U.S. at 93.

In situations where corporations divide their coordinating functions across a broad area, lower courts are to look "toward the center of overall direction, control, and coordination," and need not "weigh corporate functions, assets, or revenues." *Id.* at 96. For example, "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Id.* However, close examination is appropriate to discourage jurisdictional manipulation. *Id.* at 97. More than "a mail drop box, a bare office with a computer, or the location of an annual executive retreat" is needed. *Id.* Actual executive functions must be housed in the purported principal place of business. *Id.*

### III. ANALYSIS

Homer strongly urges remand, suggesting that the Ohio headquarters of AEP is something of a façade, constructed out of thin air to improperly manufacture diversity.[1] (ECF 7 at 4–10). In support, he cites a number of Fifth Circuit cases urging a variation of the 'nerve

---

[1] It is uncontested that the amount in controversy exceeds $75,000 and that Homer is a citizen of Texas. Therefore, the Court will not address those points and concentrate instead on the citizenship of AEP, which is the focus of the Motion. (ECF 7).

3

center' test that includes consideration of a corporation's total activity. (*Id.*). In response, AEP points to the more recently promulgated 'nerve center' test set forth in *Hertz* and a decision from the Southern District of Texas that found diversity in a case similar to this one. (ECF 8 at 3–5); *Gremillion v. AEP Texas Central Company*, 2018 WL 1308541 (S.D. Texas 2018). Homer counters that *Gremillion* has no precendital weight in this Court and AEP has not demonstrated that its operations are directed, controlled, or coordinated from Ohio. (ECF 9 at 5–6).

Homer urges this Court toward the Fifth Circuit's decision in *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401 (5th Cir. 1987), for the proposition that a court must consider the "totality of the facts" when applying the "traditional total activity test." (ECF 7 at 3 (citing *J.A. Olson*, 818 F.2d 404–10) (internal quotation marks omitted)). Specifically, he contends that "the nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community" is the proper analysis. (*Id.* at 4–5 (citing *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir. 1998)).

*J.A. Olson* and *Nauru*, however, are not directly applicable to the instant action. Those cases were decided by the Fifth Circuit pre-*Hertz*. This distinction is critical because the Court in *Hertz* specifically cautioned against measuring the total activities in one state against the total activities of another, as Homer and the cases he cites would have this Court do. *Hertz*, 559 U.S. at 93; (ECF 7 at 4–5). A 'general business activities' test of the kind contemplated by *J.A. Olson* and *Nauru*, even when paired with 'nerve center' test, was explicitly set aside by *Hertz*:

> By contrast, the application of a more general business activities test has led some courts, as in the present case, to look, not at a particular place within a

4

> State, but incorrectly at the State itself, measuring the total amount of business activities that the corporation conducts there and determining whether they are "significantly larger" than in the next-ranking State.

*Hertz*, 559 U.S. at 93. A decision based upon whether more of AEP's business functions are domiciled in Ohio or Texas would therefore be incorrect. Indeed, the principal place of business is one place within a state and is not properly thought of as an entire state. *Id.* Were the opposite true, a simple majority of revenue, employees, or storefronts would carry the day for jurisdictional purposes.

The question then is not where AEP conducts most of its business nor the nature and breadth of its business activities; instead, the issue for the Court to determine is the location of AEP's 'nerve center,' that is, where the officers direct, control, and coordinate operations. *Id.* at 93–94. The answer is clearly provided by House's affidavit. Therein, he affirmatively states that decisions on issues including accounting, recordkeeping, capital improvements, regulatory compliance, procurement, and general management are made in Ohio. (ECF 8-1 at 4–6). This plainly satisfies the *Hertz* test as it shows the nexus of direction, coordination, and control lies in Ohio.[2]

Further supporting that conclusion is House's statement that all employees, including the COO who works in Texas, "ultimately report to executives located" at AEP's Ohio headquarters. (*Id.* at 6). Although Homer argues that the affidavit is "self-serving," (ECF 9 at 5), it definitively sets forth an adequate basis for diversity

---

[2] Under the prior standard, applicable before *Hertz*, the fact that all, or nearly all, of AEP's business operations are located in Texas would have been relevant and perhaps determinative in the Court's analysis. Seemingly in pursuit of that point, Homer offers maps and other screenshots from AEP's website in his briefs. (ECF 7 at 5–8; ECF 9 at 4–5). However, *Hertz* changed the applicable test slightly, away from *J.A. Olson* and *Nauru*.
   Indeed, the court in *Balachander v. AET Inc. Ltd.*, which considered *Hertz* less than a year after its issuance, noted as much. 2011 WL 4500048 at *5–7 (S.D. Texas 2011). The complexities of assessing corporate control for companies that are dispersed over a wide area, the court wrote, led the *Hertz* Court to reject "nuanced and fact-specific" tests like those advanced by *J.A. Olson* and *Nauru* "in favor of a bright-line test." *Id.* at *7.

jurisdiction under *Hertz* and 28 U.S.C. § 1332 because bona fide executive functions are housed there.

## IV. CONCLUSION

For the reasons stated herein, the Court determines federal court jurisdiction is appropriate and the Motion to Remand is DENIED. The case will remain before this Court.

IT IS SO ORDERED.

ENTERED October 20, 2022.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE